PEOPLE ex rel. TOPPING v. PURDY et al., Com'rs of Taxes and Assessments.

(Supreme Court, Appellate Division, First Department. March 24, 1911.)

1. TAXATION (§ 348*)—VALUATION—EASEMENTS.

Where pursuant to Laws 1868, c. 841, amended by Act April 14, 1869 (Laws 1869, c. 183), the commissioners of highways of a town filed a map showing the layout of streets, and thereafter an owner of land within such map filed a plat of his land showing streets conforming to such commissioners' map, and sold lots on both sides of M. street therein, such purchasers acquired and possessed an easement of air and access over such street, though the city of New York, on taking the section into its limits, discontinued such street, and hence the fee to the land within such street was of no market value, and could not be assessed for taxation at more than a nominal value, and it is immaterial that the dominant estates have not been assessed with the value of the easement.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 348.*]

2. TAXATION (§ 347*)—PROPERTY SUBJECT TO.

Under Const. art. 1, § 6, providing that private property shall not be taken for public use without just compensation, where property has no

real value for which compensation must be paid, it cannot have any value for purposes of taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 579–581; Dec. Dig. § 347.*]

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of Charles H. Topping, against Lawson Purdy and others, as Commissioners of Taxes and Assessments of the City of New York, to reduce an assessment on real estate. From an order of the Special Term reducing the assessment, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Archibald R. Watson, Corp. Counsel (Curtis A. Peters, of counsel), for appellants.

Merle I. St. John (A. Wheeler Palmer, on the brief), for respondent.

CLARKE, J. Relator is the owner of a parcel of real estate situated in the block between Marcy Place, Elliott Place, Grand Boulevard, and Walton avenue, in the borough of the Bronx, lying on the north side of Marcy Place 207.13 feet east of Walton avenue, and designated on the tax map of said city in section 11 as lot No. 85 in block 2841. This parcel is 60 feet in width and 100 feet in length, and was assessed for taxation for the year 1910 at $2,500. Prior to May 22, 1872, Andrew J. Dam was the owner of a certain tract of land within the territory bounded by Marcy Place on the south, Jerome avenue on the west, Grand Boulevard and Concourse on the east, and Elliott Place on the north, including the aforesaid premises owned by petitioner. By chapter 841 of the Laws of 1868, amended by an act passed April 14, 1869 (Laws 1869, c. 183), the commissioners of highways of the town of Morrisania were authorized to lay out the streets in certain sections of the then town of Morrisania. On February 13, 1871, there was filed in the office of the register of Westchester county a map laying out proposed streets in the town of Morrisania. Certain streets designated on the said map as Marcy Place, Walton avenue, and Mott street ran through the aforesaid premises owned by Andrew J. Dam. On October 8, 1872, there was filed in the office of the register of Westchester county a map entitled:

"Map of property at Inwood, town of Morrisania and West Farms, Westchester county, property of Andrew J. Dam, New York, May 22, 1872; R. Rossa, surveyor."

Upon said maps were shown the premises of Andrew J. Dam cut up into lots fronting upon certain streets laid out thereon. On the said map Marcy Place, Walton avenue, and Mott street were shown laid out with the same dimensions, and at the same places as shown on the said map of the commissioners of the town of Morrisania. Mott street, as thereon laid out, was coincident with the aforesaid premises owned by petitioner.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereafter, by deed recorded on or about October 1, 1872, Andrew J. Dam conveyed to Eliza Goodman lots 21–25 on the aforesaid map of Inwood by description as follows:

"Beginning on the northeast corner of Marcy Place and Mott street, as laid out on the said map of Inwood, running thence easterly along the east side of Marcy Place, 164 feet; thence northerly parallel with Mott street 102 feet 9 inches; thence westerly parallel with Marcy Place 158 feet 7½ inches to the easterly side of Mott street; thence southerly along the easterly side of Mott street 103 feet 3 inches to the point or place of beginning."

At about the same time Dam conveyed lots 16, 17, 18, and 19 on the said map, being immediately to the west of Mott street, to one Hamberger by deed recorded in the office of the register of Westchester County, liber 812 of Conveyances, p. 283, containing the same form of description as Dam to Goodman.

Thereafter, by chapter 613 of the Laws of 1873, the aforesaid section of Westchester county was annexed to the city and county of New York. Said act of annexation provided that all the streets laid out by the local authorities should be the official layout of that portion of the city of New York. Thereafter the local authorities of the city of New York changed the map of the city so as to remove Mott street or Mott avenue therefrom. The relator alleges that, by reason of the aforesaid conveyances to Goodman and Hamberger, the said land within Mott street is still subject to rights of air and access over the same in favor of the said Goodman and Hamberger and their successors, and that the ownership of the naked fee of the land in Mott street or Mott avenue is for all practical purposes valueless, inasmuch as the owner of said premises can do nothing with the same and it has to be kept open for the benefit of the said abutting owners. He further alleges that he has duly acquired the interests of the said Dam and owns and holds the said property under and subject to all the terms, conditions, and covenants and restrictions contained in said deeds to Goodman and Hamberger, that the owners of said lots and lands so conveyed to Goodman and Hamberger now own as an easement appurtenant to their respective properties the right to have free egress and ingress to, from, and over said land designated as Mott street or Mott avenue, and to have the same kept free for passage and to have the air come over the same; that the only persons who have any beneficial interest in or can make any beneficial use of petitioner's property are the owners of the lots adjoining it, and the only rights they have in or to it are the rights to use it and have it maintained and preserved in the manner and for the purposes of a private street; that, subject to said easements, petitioner's property could not have been sold under ordinary circumstances on the second Monday of January, 1910, or at any other time, for any price; that, subject to said easements, it has no value. The value of the easements in it appurtenant to the lots surrounding constitutes its entire value.

In his application to the commissioners of taxes, relator says the property was acquired in the year 1909. The consideration paid was $850 for this and a full unincumbered lot, block 2841, lot 30, except for taxes and assessments. Since the property was acquired, the amount expended in permanent improvements has been none. The

court below granted the application and reduced the assessment to $1 upon the authority of People ex rel. Poor v. Wells, 139 App. Div. 83, 124 N. Y. Supp. 36, affirmed 200 N. Y. 518, 93 N. E. 1129, the Grammercy Park Case. Of course, that case presented very extraordinary circumstances. It appeared that the abutting property owners had been assessed with reference to the easements over the park appurtenant to their property. The city attempted to assess the value of the park indirectly to the abutters through the trustees in whom the legal title to the park was vested, but who would be required to collect the amount thereof from the abutting property owners, so that the effect would be a direct instance of double taxation for the same benefits. Mr. Justice Dowling, whose opinion was adopted by this court and by the Court of Appeals, said:

"In this case it is apparent from the statement heretofore made that the relator's property cannot be sold under ordinary circumstances for any sum whatever. No person buying this property would acquire any beneficial interest therein. Assuming that he could get legal title to it from the trustees, subject to the easements, his title would simply be a naked one with none of the usual advantages attendant upon the ownership of real estate. He would simply hold a title to a piece of property from which he could derive no benefit, and in which he could have no rights of enjoyment, but which would be devoted entirely to the enjoyment and use of the surrounding property owners."

Further:

"The city has, therefore, taken unto itself the advantage of the second of the propositions heretofore laid down, namely, that the dominant estate should be increased by the value of the easement. It cannot, in fairness and justice, do this and at the same time refuse to accede to the justice of the first of the propositions, namely, that the market value of the servient estate is lessened by the value of the amount of the easement."

The element of double taxation does not appear in the matter at bar. It is not shown that the property on both sides of this discontinued private road which does not appear ever to have been laid out except upon paper has had added to it the value of the easements therein. But the fact is that a piece of real estate which had been deprived of all its valuable attributes, so far as the owner was concerned, was treated by the tax commissioners as if still possessing them. Under the Constitution (article 1, § 6) private property shall not be taken for public use without just compensation. If the city should undertake to acquire the relator's property by condemnation for any public use, it would not be required to pay therefor more than a nominal sum. All that would be taken from the owner would be the naked fee.

In the Matter of the City of New York, In re Carroll Street, 137 App. Div. 39, 121 N. Y. Supp. 435, Mr. Justice Rich said:

"Her fee was subject to the right of ingress and egress over the land in the street, and, in view of these facts, a case is not presented in which substantial damages should have been awarded her. The city took from her a naked, unproductive fee, incapable of pecuniary advantage, useless, bereft of enjoyment and incapable of earning, and, in the absence of reliable evidence establishing the contrary, the land must as to her be held to have possessed nominal value only."

In the Matter of Schneider, 136 App. Div. 444, 121 N. Y. Supp. 9, Mr. Justice Scott said:

"On the date on which title vested in the city of New York, one David Peltz was the owner in fee of this strip of land, but owing to conveyances made by his predecessors in title wherein the abutting property was described by and bounded upon 157th street, then laid down and located on the city map, but not legally acquired and opened, his fee was so incumbered with easements in favor of the abutting property so conveyed that there was left to him nothing but a naked barren fee for which no more than a nominal award should have been made."

This proposition is now well established. Matter of Decatur Street, 196 N. Y. 286, 89 N. E. 829; Matter of the City of New York (Johnson Avenue) 135 App. Div. 630, 120 N. Y. Supp. 798, affirmed 198 N. Y. 505, 92 N. E. 1087.

If, then, the parcel of real estate has no real value for which compensation must be paid, if taken in condemnation proceedings, how can it have a value for purposes of taxation? Its valuable qualities have been attached to the adjoining properties which, by the acquisition of easements appurtenant thereto, have been increased in value and should be assessed accordingly. I do not see how the servient estate can be taxed upon the basis of the easements which have been made appurtenant to the dominant estate.

It follows, therefore, that, although the question of double taxation is not here involved, this case comes directly within the reasoning of People ex rel. Poor v. Wells, supra, and that the order below was right, and should be affirmed, with costs and disbursements to the respondent. All concur.